AO 91 (Rev. 5/85) Criminal Complaint San Francisco Venue

FILED

SEP 24 2004

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# United States District Court

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA - Plaintiff

v.

## CRIMINAL COMPLAINT

EMC

**PHILIP MING WONG**

CASE NUMBER: 3 04 30348

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about and between September 27, 1999 and February 28, 2001, both dates approximate and inclusive, in the Northern District of California defendant(s) did, (Track Statutory Language of Offense)

Knowingly forge, counterfeit, alter and falsely make an immigrant and non-immigrant visa, permit, border crossing card, alien registration receipt card and other documents prescribed by statute or regulation for entry into or as evidence of authorized stay and employment in the United States, knowing such document to be forged, counterfeited, altered or falsely made, and to have been procured by means of any false claim and statement, and to have been otherwise prepared by fraud and unlawfully obtained,

in violation of Title 18 United States Code, Section(s) 1546(a) - Fraud An Misuse Of Visas, Permits And Other Documents (in addition to further violations of the law detailed on page 2 attached).

I further state that I am a Special Agent, US Dept. of State, Diplomatic Secret Service and that this complaint is based on the following facts:
Official Title

See attached affidavit of SA Corey R. Dunphy, attached hereto and incorporated herein by reference.

BAIL: No bail arrest warrant requested
PENALTY: 15 years imprisonment and or fine up to $250,000
3 years supervised release
$100 special assessment

Approved as to form: [signature]

Philip J. Kearney
Assistant United States Attorney

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

[signature]
Signature of Complainant

Sworn to before me and subscribed in my presence,

Corey R. Dunphy, Special Agent
US Department of State, Diplomatic Sec. Service

9/24/04
Date

at San Francisco, California
City and State

Edward M. Chen - U.S. Magistrate Judge
Title of Judicial Officer

[signature]
Signature of Judicial Officer

Name &

ADDITIONAL CRIMINAL VIOLATIONS COMMITTED BY KATHLEEN WONG:

2. Did knowingly encourage and induce an alien to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry and residence was or would become a violation of law in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) – Bringing In And Harboring Certain Aliens.

BAIL: No bail arrest warrant requested
PENALTY: 10 years imprisonment
$250,000 fine
3 year period of supervised release
$100 dollar special assessment

3. Did knowingly conspire with other persons both known and unknown to encourage and induce an alien to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry and residence was and would become a violation of law in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) – Conspiracy To Bring In And Harbor Certain Aliens.

BAIL: No bail arrest warrant requested
PENALTY: 10 years imprisonment
$250,000 fine
3 year period of supervised release
$100 dollar special assessment

4. Did knowingly establish a commercial enterprise for the purpose of evading any provision of the immigration laws in violation to 8 U.S.C. § 1325(d) – Improper Entry By Alien.

BAIL: No Bail arrest warrant requested
PENALTY: 5 years imprisonment
$250,000 fine
3 year period of supervised release
$100 special assessment

NORTHERN DISTRICT OF CALIFORNIA )
) ss. AFFIDAVIT
City of San Francisco, County of San Francisco )

AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT FOR AN ARREST WARRANT FOR KATHLEEN TING YIN WONG AKA KATHLEEN TIN WONG AKA KATHLEEN WONG AKA MEGAN CATHY XU AKA KATHLEEN T XU AND PHILIP MING WONG AKA MING YIN WONG AKA HUANG MINGXIAN AKA PHILIP WONG

I, Corey R Dunphy, being duly sworn, depose and state:

1. That I am a Special Agent with the United States Department of State, Diplomatic Security Service, San Francisco Field Office, and that I am assigned to investigate passport fraud, visa fraud and immigration related offenses. I have attended the Federal Law Enforcement Training Center in Glynco, GA for the Criminal Investigator Program as well as the State Department's Training Center in Dunn Loring, VA for criminal investigations in matters dealing with U.S. Passport and Visa Fraud.

2. This Affidavit is made in support of a complaint against KATHLEEN TING YIN WONG, AKA KATHLEEN TIN WONG, AKA KATHLEEN WONG AKA MEGAN CATHY XU, AKA TING XIAN HUANG, AKA KATHLEEN T XU, hereinafter referred to as "KATHLEEN," and PHILIP MING WONG AKA MING YIN WONG AKA HUANG MINGXIAN AKA PHILIP WONG, hereinafter referred to as "PHILIP," for Title 8 United States Code, Section 1324 (1)(A)(iv),(v)(I), and (II), Bringing in and harboring certain aliens, inducing to enter, conspiracy to commit the proceeding acts, aids or abets the commission of the preceding acts; Title 8 United States Code, Section 1325(d) Improper Entry by Alien, Immigration-related Entrepreneurship fraud; Title 18 United States Code, Section 371, Conspiracy to commit offense or to defraud United States; and Title 18 United States Code, Section 1546, Visa Fraud. This Affidavit also is made in support of a complaint against KATHLEEN for Title 18 United States Code,

Section 1542, False Statement(s) in Application and Use of a Passport; and Title 18 United States Code 1544, Misuse of a Passport.

**PEOPLES REPUBLIC OF CHINA PRIOR CONVICTIONS**

3. On October 25, 2000 KATHLEEN and PHILIP were detained by Wuhan Police, in the People's Republic of China on suspicion of immigration fraud. In April 2001 a Public Security Bureau investigation of Kathleen Ting Wong and Philip Wong for alien smuggling and other related charges resulted in their formal arrest in China. The court found American citizen KATHLEEN guilty of visa fraud to facilitate illegal immigration for 18 Chinese nationals in exchange for approximately $360,000USD. KATHLEEN was sentenced to six months of residential bail followed with immediate deportation. KATHLEEN was deported to the United States in June 2002. The court also found PHILIP, who is a permanent U.S. citizen, guilty of fraudulently obtaining exit stamps (visas) and documents for the purpose of illegal immigration for 18 Chinese nationals for approximately $360,000 and sentenced him to three years in jail. PHILIP was released early when a fine was paid on his behalf.

**VISA FRAUD, CONSPIRACY, AND HUMAN TRAFICKING**

4. In the fall of 2000, as a result of these arrests, U.S. Embassy Beijing Anti-Fraud Unit (AFU) began to suspect the occurrence of fraudulent activities with the Express visa lane at the American Chamber of Commerce (AMCHAM) in Wuhan. The Express visa lane at AMCHAM is set up for use by select companies to facilitate the review of the Non-immigrant visa applications for their employees, in support of aspects of their business operations, that rely on their respective employee's travel to the United States. Prior to being granted permission to use Visa express, companies are screened by the AMCHAM branch to ensure that the company is a legitimate business with a need for visas. The Visa express lane supported the expeditious review of B1/B2 - Non-immigrant visa (NIV). This type of visa is issued by the United States Embassy (USEMB) for both business and visitors, for single or multiple entries, and is valid no

longer than 6 months. The NIV application asks for the applicant's biographical data, the name of the company or employers, their address, the name of the sponsor (who is paying for airfare and hotel and other expenses), the purpose of visit, date of expected travel and duration of stay; these factors are considered in the approval process. Inconsistencies in this information could lead to further interviews with USEMB consular officers or an application refusal. Once the visa is issued, the recipient may travel under the guidelines of the visa. Before the visa expires, the recipient must depart the United States or be in violation of the terms of the visa and immigration laws of the United States.

5. The USEMB Beijing AFU conducted a review of visa applications submitted through the AMCHAM Wuhan drop-box program, which revealed that three U.S.-based companies submitted over 119 identified visa applications. These companies are Centech Consulting & Development Group Inc; American Construction's Materials & Equipment Inc.; and the U.S. Investment and Consulting Group.

**SUBJECTS**

6. On October 12, 2001 the United States Department of State received a request from the American Embassy Beijing to investigate the efforts of KATHLEEN and PHILIP to fraudulently obtain U.S. visas by using their relationship with AMCHAM Wuhan and fictitious business entities to illegally aid Chinese nationals seeking entry into the United States.

**KATHLEEN**

7. KATHLEEN is a U.S. Citizen, naturalized on August 20, 1987, U.S. Naturalization Certificate No. A35613656, born on October 2, 1968 in China and is identified by Social Security Number 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. KATHLEEN was issued United States Passport No. Z7890320 on January 10, 2000 in the name of Kathleen Ting WONG, as was also issued United States Passport No. 057039931 on December 24, 2002 in the name of Megan Cathy XU, date of birth October 21, 1968. Her permanent address

is 471 Lowell Place, Fremont, CA 94536, where her parents currently reside. KATHLEEN has been issued a California State Driver's License No. C5580030 in the name of Kathleen T XU, Megan Cathy XU, and Kathleen Ting WONG. KATHLEEN is believed to have married Dan XU in Nevada in 1998 and they have one son who resides with KATHLEEN'S parents. Dan XU, a Chinese national with no United States status, is in China and will not be approved to enter the United States.

8. Public Security Bureau record checks revealed that KATHLEEN and her brother PHILIP founded the Wuhan Province Chapter of the American Chamber of Commerce and became the President and Executive Director. While administrating this office KATHLEEN and PHILIP opened several companies including: Wuhan American Investment & Consulting Co., Ltd.,Wuhan City Bar Co., Ltd., American Construction Materials & Equipment, Inc, Wuhan Office, Centech Consulting and Development Group in Wuhan, China, and American Construction Equipment Co. Wuhan Office and U.S. Investment and Consulting Group. The Public Security Bureau considered the Wuhan AMCHAM office an "unofficial" branch of AMCHAM, namely that KATHLEEN and PHILIP'S AMCHAM branch was not officially recognized by the Chinese government.

9. Both United States and Chinese law enforcement agencies investigated and found that since 1995 KATHLEEN had founded or been an officer of: American Investment & Consulting Group in Nevada, U.S., American Investment & Consulting Group Wuhan Office, American Investment & Consulting Group Beijing Office, American Automobile Industrial Co. in California, U.S., American Automobile Industrial Co. Wuhan Office, American Construction Equipment Co. Beijing Office, American Construction Materials & Equipment, Inc. in Nevada, U.S., U.S. Investment and Consulting Group in Nevada, U.S., and Centech Consulting and Development Group, in Nevada, U.S.

**PHILIP**

10. PHILIP was born in China on September 24, 1965 and is a Permanent Resident Alien of the United States, No. A035613655 and possesses Social Security Number 572-

59-9918. His last known residence is 4160 Suisan Valley Road, Suite E 343, Fairfield, CA 94534. PHILIP has been issued a California State Driver's License No. C3030386 in the name of Phillip Ming WONG and a Nevada Driver's License No. 0201862965 in the name Ming Yin WONG. PHILIP also carried Chinese Passport No. 149251329 issued on February 28, 2003.

**COMPANIES**

11. A record check of visa applications submitted through the AMCHAM Wuhan drop-box program revealed that three U.S.-based companies, with corporate charters that listed KATHLEEN and PHILIP as officers, had submitted over 119 identified visa applications. These companies are Centech Consulting & Development Group Inc (Centech), American Construction's Materials & Equipment Inc (ACME) and the U.S. Investment and Consulting (USIG) and are hereinafter referred to as the "Companies".

12. Pirkko URLI, a Fraud Program Manager at the American Embassy Beijing and a U.S. Government officer for 16 years, as well as an expert in the Beijing visa approval process, told your affiant the following in regards to the process in which an AMCHAM sponsored company using the Visa Express lane could facilitate an individual or company being approved for a NIV: "back in late 90s and 2000 and 2001, there was less control. The AMCHAM member companies got a company member ID card from AMCHAM, based on an application, which was also reviewed by the consular section. The visa applications were then brought in to the consular section by a company representative who carried the ID card. The applications were then reviewed by a Consular associate (cleared American who had had the appropriate consular training) and the visas were either approved or the applicant was called in for an interview. It was quite easy then to get applications through if your documents looked good and the applicant was only interviewed if the Consular associate had questions regarding the application." URLI added in regards to AMCHAM Wuhan's recognized status, "....AMCHAM Wuhan was an "unofficial" branch of AMCHAM Beijing as the Chinese would not allow them to get "official" registration." URLI also stated that, "the refusal rate for Chinese B1/B2 visa

applicants has always hovered around 35 – 40%. Back in 1999 to 2001 all interviewed visa applicants without an invitation letter and other supporting documents were denied visas. Even the drop box cases like Amcham needed an employer's name and also an invitation letter. So it would have been very difficult to get a visa without this information." Without an AMCHAM approved company and a AMCHAM approved sponsor, Chinese nationals would most likely not have been approved for a NIV.

**U.S. INVESTMENT AND CONSULTING GROUP**
**(USIG)**

13. A record check by the United States Embassy Beijing in China revealed that PHILIP established the USIG, in China. KATHLEEN is listed as the company's President, the company's Secretary is Daniel QUAN and the Treasurer is PHILIP. This company's Chinese entity was established through the Wuhan Chapter of AMCHAM on January 12, 1999. The application for AMCHAM bears the printed name PHILIP WONG and title as "General Manager, as well as a business card with PHILIP'S name, listed as the "General Manager" and the company's contact information.

14. On April 9, 2004, United States Embassy, Beijing, China, Consul General provided a written statement that the Consular Section Fraud Prevention Unit conducted an investigation into USIG. The investigation revealed that the contact information contained in the NIV applications which were submitted through the Visa Express lane at the AMCHAM to the USEMB in Beijing, was fictitious. The contact information included telephone numbers that were wrong, non-existent, or disconnected at the time the NIV applications were submitted. The address of this business, purportedly operating in China, could not be located. Based on this information your affiant believes sthat USIG did not exist as a real company.

15. A similar record check conducted in the United States found USIG'S American business address and contact information to be fictitious. Records from the department of

the Secretary of the State of California provided that no record exists for USIG. The department of the Nevada Secretary of State register provided records that reflect the corporate status for USIG, No. C217870 as Inactive/Delinquent since 1995. The register listed KATHLEEN as the President in Wuhan, China, PHILIP as the Treasurer in Wuhan, and QUAN as the Secretary in Carson City, NV. However, as stated previously, USIG did not exist in Wuhan either.

16. Dan QUAN stated during an interview that both he and PHILIP ran USIG in China from 1996 until early 1999 with the intent of opening theme parks in China with American funding but no business was ever generated. QUAN stated that after early-1999, the business no longer existed. QUAN stated that during the course of USIG'S business that there was never a need to assist Chinese nationals in obtaining NIVs in any manner whatsoever. QUAN stated that he knew PHILIP continued to use the business name, USIG, in Wuhan, for an unknown purpose, and QUAN considered the business "hijacked".

17. Record checks conducted by the U.S. Department of State Consular Services revealed that USIG, in Wuhan and Beijing, China, during a period from February 1999 until February 2001, was listed as an "employer" or as the entity who will "furnish financial support including tickets" on 26 NIV applications. Of these applications, all were approved and Non-Immigrant visas were issued. Upon further review in 2001, all were found to contain evidence of fraud to include: fictitious telephone numbers and fictitious business addresses. It should be noted that during this entire time period there was no U.S. based USIG that would require employees.

**AMERICAN CONSTRUCTION'S MATERIAL & EQUIPMENT INC (ACME)**

18. A record check by the United States Embassy Beijing in China of documents submitted to the American Chamber of Commerce revealed that ACME'S China chief

representative is PHILIP. On July 7, 1999, this company was established through the Wuhan Chapter of AMCHAM with Stanley WONG listed as the AMCHAM voting representative.

19. Continuous archival record checks beginning in 2002 through the present for ACME and its officers and addresses in the United States revealed that the California address listed, 2114 Senter Road, Suite 22, San Jose, CA 95112, the company phone number (408) 995-0300 and the fax number (408) 995-6584 were fictitious. The Secretary of the State of California provided that no record exists for ACME. A record check of the Nevada Secretary of State register revealed that the corporate charter for ACME, No. C102020X-1995 was revoked in 1995. The register listed KATHLEEN as the Secretary in Wuhan, China, PHILIP as the Secretary in Beijing and QUAN as the Treasurer in Beijing, China.

20. On September 21, 2004, your affiant interviewed the owner of 2114 Senter Road, San Jose, CA. The owner, Mr. Han NGUYEN, provided that he has been a friend of PHILIP, KATHLEEN and STANLEY since high school. NGUYEN provided that none of the three siblings ever did business at this address nor was ACME ever in this site. NGUYEN did provide that PHILIP asked him if he could use the address for one of his projects, NGUYEN replied "no". NGUYEN stated that PHILIP told him that his successful business in China was "getting visas for people" and that is how he made his money. NGUYEN owns a printing company and remembers the names Centech, ACME and U.S. Investment & Consulting Group, as well as American Chamber of Commerce in his dealings with PHILIP and KATHLEEN. NGUYEN recalls that Centech is KATHLEEN'S company. Your affiant has reviewed the Invitation letters from ACME and Centech and found them to be consistent in style, format and font. Due to their distinct nature, your affiant believes they were likely designed together.

21. On April 9, 2004, United States Embassy, Beijing, China, Consul General provided a written statement that the Consular Section Fraud Prevention Unit conducted an investigation into ACME. The investigation revealed that the contact information

contained in the Invitation letters in the name of ACME, which accompanied NIV applications and were submitted through the Visa Express lane at the AMCHAM to the USEMB, was fictitious. The contact information included telephone numbers that were wrong, non-existent, or disconnected at the time the NIV applications were submitted. The address of this business, purportedly operating in China, could not be located.

22. A record check conducted by the U.S. Department of State Consular Services revealed that during the period from November 1999 until January 2001, ACME submitted Invitation letters along with the NIV applications for 14 of 69 individuals whose NIV applications bear ACME as the listed employer or sponsor. An "Invitation" letter is a cover letter that accompanies a group of NIV applications in their submission to the USEMB; this Invitation letter has the company contact information, the names of those sponsored, a paragraph of explanation about the intended trip, and is often signed by the preparer. The ACME Invitation letters in question bear the name and signature of Stanley Wong, as the "China Chief Representative", and list the corporate office location as 2114 Senter Road, Suite 22, San Jose, CA 95112, Telephone (408) 995-0300, Fax (408) 995-6584. As stated previously, this address is not and never has been a valid business address for ACME.

23. On June 8, 2004, Special Agent POOLE and your affiant conducted a telephonic interview with STANLEY WONG. STANLEY provided that he was in Wuhan, China in 2000 on the behalf of ACME, Inc for a construction job that never materialized. STANLEY stated that PHILIP, KATHLEEN and QUAN owned the alleged business and there was no office in China or the United States. STANLEY stated that he and QUAN were the only employees and that PHILIP would meet with them on occasion. STANLEY provided that he never signed any Invitation letters nor did he sponsor anyone for a United States Visa excluding his wife. STANLEY stated that he knew of Centech and knew that PHILIP, KATHLEEN, and QUAN were involved in running Centech but he didn't know what Centech was for. STANLEY stated that ACME had no employees, made no products nor provided any legitimate service that he was aware of.

24. On December 8, 2003 Investigative Assistant WILLIS of the United States Department of State, and your Affiant interviewed Dan QUAN, who was advised that there is an "ongoing criminal investigation into allegations of visa fraud." QUAN was then read his Miranda rights and agreed to waive his right and answer questions regarding business affairs. QUAN provided that he began his business relationship with his nephew PHILIP and niece KATHLEEN, all as officers of the company, ACME, and then incorporated in the State of Nevada. QUAN provided that the company was established to generate foreign investment in construction in China and Nevada. QUAN stated that he knew both PHILIP and KATHLEEN were engaged in fraudulent activities regarding visas. QUAN stated that PHILIP and KATHLEEN discussed accepting fees to obtain visas for Chinese nationals working at Budweiser while at a cookout while in China around 1999. QUAN provided that ACME had no affairs that required Invitation letters for Chinese nationals to visit the United States. QUAN stated that he believed that both KATHLEEN and PHILIP engaged selling visas when he was away in the United States or out of the area and on several occasions he told PHILIP to stop.

25. Record checks conducted by the U.S. Department of State Consular Services revealed that American Construction Materials & Equipment, Inc, in Wuhan, during a period from September 1999 until December 2000, was listed as an "employer" or the as the entity who will "furnish financial support including tickets" on 69 NIV applications. Of these applications, 67 were approved and NIVS were issued. Upon further review in 2001, all 69 were found to contain evidence of fraud to include: fictitious telephone numbers and fictitious business addresses.

## CENTECH CONSULTING AND DEVELOPMENT GROUP (CENTECH)

26. A record check by the United States Embassy Beijing in China revealed that Centech's China representative is Kathleen Wong. On August 9, 2000, this company

was established through the Wuhan Chapter of AMCHAM and listed KATHLEEN as the corporate voting representative.

27. A record check for Centech, its officers and addresses in the United States as listed on the NIV applications and Invitation letters contained fictitious information. The Centech corporate headquarters, listed to be 39039 Paseo Padre Rd, Suite 205, Fremont, CA, did not exist. The corporate telephone number (510) 795-7779 was invalid. The corporate fax number (510) 795-7778 was registered to an S. Wong with a date of birth of November 10, 1962, which is identical with the birth date of Stanley WONG. This facsimile machine is located at: 471 Lowell Place, Fremont, CA, an address, listed as the residence of KATHLEEN. The Secretary of the State of California provided that no record exists for Centech. The Secretary of the State of Nevada records provided that Centech, No. C230060X-1996 was Inactive/Revoked in 1996. At that time the business was located in Reno, Nevada and its filing listed "care of: Xu Dan Int'l Trade & Commerce Center," and Dan XU as the Secretary/Treasurer. Dan XU is the spouse of KATHLEEN.

28. On November 19, 2002 Assistant Regional Security Officer, American Embassy Beijing, Roberto MEDRANO and Post's Fraud Prevention Coordinator (FPC) Pirkko URLI, interviewed Dan XU, husband of KATHLEEN, in conjunction with XU'S submission of a NIV application. XU stated that he married KATHLEEN in 1998 in Nevada and that between 1997 and 2000 he worked for Centech. XU claimed not to have any knowledge of either Centech or his wife being involved in visa fraud schemes. XU was unable to provide any specific details as to his former employment with Centech other than he was a sales representative. XU offered no details about what it was that he sold. XU was asked about a trip to the United States in 2000 while employed by Centech. XU replied that it was a business trip to see Environmental Resources International (ERI) in Carson City, Nevada. When XU was asked if he contacted Centech's office in Nevada, he replied in the negative. He could not explain the reason for not contacting Centech. XU stated that he was employed by Centech as a sales manager, which contradicts State of Nevada's corporate records that lists Dan XU as the

Secretary/Treasurer of Centech. Dan QUAN, the President and only employee of ERI stated that Dan XU had "no business or reason whatsoever to contact or visit ERI" and that "Centech and ERI never did business."

29. On April 9, 2004, United States Embassy, Beijing, China, Consul General provided a written statement that the Consular Section Fraud Prevention Unit conducted an investigation into Centech. The investigation revealed that the contact information contained in the Invitation letters in the name of Centech, which accompanied NIV applications and were submitted through the Visa Express lane at the American Chamber of Commerce to the United States Embassy in Beijing, was fictitious. The contact information included telephone numbers that were wrong, non-existent, or disconnected at the time the NIV applications were submitted. The address of this business, purportedly operating in China, could not be located.

30. A record check conducted by the U.S. Department of State Consular Services revealed that Centech in Wuhan, during the period from September 1999 until January 2001, was listed as an "employer" or the as the entity who will "furnish financial support including tickets" on 24 NIV applications. Of these applications, all were approved and NIVS were issued. Upon further review in 2001, all were found to contain evidence of fraud to include: fictitious telephone numbers and fictitious business addresses.

31. A record check conducted by the U.S. Department of State Consular Services revealed that during the period from September 1999 until January 2001, Centech was used in the submission of Invitation letters, which accompanied the NIV application for 16 of these individuals. The Invitation letter bear the signature Kathleen Wong and list the corporate office location as 39039 Paseo Padre Rd, Suite 205, Fremont, CA, Telephone (510) 795-7779, Fax (510) 795-7778. This facsimile number listed on the invitation letters is the same as the facsimile number found with the corporate charter, which is listed to a "S. Wong" and this facsimile machine is located at 471 Lowell Place, Fremont, CA, a residence of KATHLEEN.

**IMPROPER ENTRY BY ALIEN**

**IMMIGRATION-RELATED ENTREPRENEURSHIP FRAUD**

Title 8 United States Code Section 1325(d)

32. Your affiant believes that probable cause exists that KATHLEEN and PHILIP knowingly attempted to, and evaded provisions of the immigration laws of the United States, when they used and or established Centech, ACME, and the USIG, all commercial enterprises used as sponsor companies or employers or as the issuer of "Invitation" letters, in the submission of NIV applications, all containing fictitious information, for the purpose of evading provisions of the immigration laws of the United States in violation of Title 8 United States Code Section 1325(d), Improper entry by alien, Immigration-related entrepreneurship fraud.

**NON IMMIGRANT VISA APPLICATIONS**

33. Record checks of official Consular and NIV databases used reveal that USIG, ACME and Centech, the Companies, were used as corporate entities, to issue Invitation letters designed to accompany NIV applications, or to be listed as the entity "who will furnish financial support, including tickets" or as "present employer" on the NIV application itself, submitted by Chinese nationals, or other individuals using their identities, seeking to enter the United States.

34. Record checks reveal that 119 Chinese nationals, had NIV applications submitted on their behalf, which used the fictitious information from these companies set up, and run by KATHLEEN and/or PHILIP, and 117 of these Chinese nationals were approved and then received a United States NIV. The statute of limitations for visa fraud is 5 years. Of the 117 visas issued, 110 were used within the last 5 years of today's date. Of these 110 used NIVS, 57 immigrants had a Port of Entry into the United States at the San Francisco International Airport.

35. Your affiant's investigation, which included interviews with suspects, witnesses and record checks of the Department Homeland Security Immigration database, revealed that KATHLEEN and/or PHILIP encouraged or induced 48 Chinese nationals to have NIV applications submitted on their behalf by KATHLEEN and/or PHILIP or their agents, using the fictitious information from the non-existent "Companies" described above, which were administered by KATHLEEN and/or PHILIP. These 48 Chinese nationals then received a United States Non Immigrant Visa, and were encouraged to come to the United States by KATHLEEN and/or PHILIP, after being provided with information to be used in clearing immigration and/or airline tickets from China into the United States, and did so, and entered, or attempted to enter, with the intent of residing and never exiting the United States, in reckless disregard of the fact that such coming to, entry or residence is in violation of law. Record checks of the Department of Homeland Security database revealed that 42 of these 48 Chinese nationals have not departed the United States, a clear violation of the 6 month limit permitted in their NIVS.

36. From February 2004 until September 2004, your affiant located and interviewed 5 recipients of NIVs, which listed either ACME, Centech or USIG, as their sponsor or employer. All of these recipients stated that they did not work for, nor have they ever heard of these Companies. All of these recipients identified KATHLEEN and/or PHILIP, through photospreads, as the person who took money in exchange for facilitating this service. These recipients also stated that KATHLEEN and/or PHILIP displayed credentials and/or other devices that fraudulently reflected their status as United States Government officials. This service provided by KATHLEEN and/or PHILIP or their agents, was, filling out the NIV application using fraudulent information, delivering the visa to the USEMB Beijing, the retrieval of the visa for the traveler, and/or, making flight arrangements, providing U.S. addresses to use in clearing immigration and providing an instruction pamphlet on how to "appear like a businessman". These recipients paid an average equivalent of $15000 USD for this service. These individuals have come to, entered, and remained past the expiration of the fraudulently obtained NIV, in the United States, after receiving assistance from KATHLEEN and/or PHILIP, with use of the

Companies, in reckless disregard of NIV requirements and in violation of the Immigration laws of the United States.

37. During the period from February 2004 until September 2004, your affiant located and interviewed a recipient of NIV, which had listed one of the Companies as their sponsor or employer. This recipient stated that they did not work for, nor have they ever heard of the Companies. This recipient also positively identified PHILIP as the individual who facilitated the issuance of the NIV after identifying himself as a "high-ranking U.S. government official".

38. From February 2004 until September 2004, your affiant located and interviewed a recipient of NIV, which listed the Companies as their sponsor or employer. This recipient stated that $18,750 USD was paid for exchange for facilitating this service. This service consisted of filling out the NIV application using fraudulent information, delivering the visa to the USEMB Beijing, the retrieval of the visa for the traveler, and/or making flight arrangements, the airline ticket, providing U.S. addresses to use in clearing immigration, an instruction pamphlet on how to "appear like a businessman". This individual has come to, entered, and remained past the expiration of the fraudulently obtained NIV, after receiving assistance under the Companies, in reckless disregard of NIV requirements and in violation of the Immigration laws of the United States.

39. A record check revealed that On February 28, 2000, a NIV application was submitted for an individual identifying himself as Ping LIU, date of birth, November 25, 1963. The application specified that LIU was a Marketing Manager for ACME. This application was approved and a visa was issued. On March 5, 2001, LIU submitted another application for a NIV. During an interview between the Consular Officer and LIU, LIU provided that he was applying for a visa through his "real" company this time, unlike the two previous visa applications when he had listed Environmental Resources International, (ERI), and ACME, as his employers. LIU explained that he had previously applied for his NIV through AMCHAM Wuhan, paying the first time 30,000 Yuan (about $4,000USD) and the second time LIU paid only 2,000 YUAN (about $300USD). LIU

claimed that AMCHAM Wuhan promised to arrange the visa, but LIU didn't know that they used fraudulent documents. The visa was issued although upon review the application was found to contain fraudulent information to include fictitious contact information. LIU entered the United States on July 24, 1999 with a Port of Entry as San Francisco. No record exists of LIU'S exit from the United States in reckless disregard of NIV requirements and in violation of the Immigration laws of the United States.

40. From 2000 until 2001, Public Security Bureau investigators of the People's Republic of China interviewed friends, family and relatives of 18 NIV recipients sponsored by the Companies. All 18 were found to have paid monies to KATHLEEN and/or PHILIP for assistance in facilitating their visa and subsequent entry into the United States in reckless disregard of the immigration laws of the United States.

41. On June 7, 2004, your affiant submitted original NIV applications to the DHS, Forensic Document Laboratory (FDL) for handwriting analysis. The selection of documents included applications from Centech, ACME and USIG as well as known handwriting exemplars from KATHLEEN taken from several years before the period in question up until 3 years after. FDL recommends exemplars taken within two years of the period in which the fraudulent visa activity occurred, however, a sufficient number of these exemplars were not available. The FDL stated "with the material available for comparison, no determination regarding common authorship could be established among the questioned handwriting" and that it is likely that more than one person signed the name "Kathleen Wong" on the submitted documents. The FDL added that "on Exhibits 1 – 5 and Exhibits 16 – 113, however, there was evidence that indicates that multiple writers prepared the questioned forms."

**FRAUD AND MISUSE OF VISAS, PERMITS AND OTHER DOCUMENTS**

Title 18 United States Code Section 1546

42. Based on the fact that in all cases the allegedly "sponsoring" or "employer" companies did not exist, combined with my interviews with the immigrants, your affiant

believes that probable cause exists that PHILIP and KATHLEEN, in addition to other currently unknown conspirators, acting on the behalf of the 119 immigrants, knowingly subscribed as true, false statements with respect to material facts in NIV applications, OF-156, a variety of the following, not mutually inclusive, fictitious "present employer," fictitious "purpose of your trip," fictitious "present occupations," fictitious "business telephone numbers," and fictitious companies listed to "furnish financial support including airline tickets, all 119 in violation of Title 18 United States Code Section 1546, Fraud and misuse of visas, permits, and other documents

**BRINGING IN AND HARBORING CERTAIN ALIENS**

Title 8 United States Code Section 1324 (1)(A)(iv),(v)(I), and (II)

43. Based on the information obtained in the investigation described above, combined with my review of DHS records, confirming that individuals using this Non Immigrant Visas actually entered the United States at the San Francisco International Airport, your affiant believes that probable cause exists that KATHLEEN and PHILLIP, conspired, and encouraged 44 Chinese nationals to have NIV applications submitted on their behalf by KATHLEEN and/or PHILIP, using the fictitious information from the Companies that were administered by KATHLEEN and/or PHILIP in this conspiracy, then these Chinese nationals received a United States Non Immigrant Visa, and were encouraged to come to the United States by KATHLEEN and/or PHILIP, who provided material support to these immigrants, not mutually inclusive, to include airline tickets, instructions to clear customs and immigration, addresses to use to for the submission of Immigration documents, and residence, and did so, with the intent of residing and never exiting the United States, in reckless disregard of the fact that such coming to, entry or residence, all in violation of law Title 8 United States Code 1324 Section (a)(1)(a)(iv), and Title 8 United States Code Section 1324 (a)(1)(a)(v)(I)(II), Bringing in and harboring certain aliens; engaging in any conspiracy to commit; aids or abets the commission of any of the preceding acts.

**CONSPIRACY TO COMMIT OFFENSE OR TO DEFRAUD UNITED STATES**

Title 18 United States Code Section 371

44. Your affiant believes that KATHLEEN and PHILLP conspired to use their powers, as the President and Executive Director of the American Chamber of Commerce, Wuhan, China, to facilitate the opening of Wuhan based enterprises of fictitious United States affiliate corporations, for the purpose of assisting Chinese nationals with illegal travel plans, in the submission of NIV applications to fraudulently enter the United States, in violation of Title 18 United States Code Section 371, Conspiracy to commit offense or to defraud the United States.

**IMMIGRATION-RELATED ENTREPRENEURSHIP FRAUD**

Title 8 United States Code, Section 1325(d) Improper Entry by Alien

45. Based on the information obtained in the investigation described above, your affiant believes that probable cause exists that KATHLEEN and PHILIP, in addition to other currently unknown conspirators, established the commercial enterprise Centech, USIG, and ACME, referred to as the "Companies", for the purpose of evading provisions of the immigration laws, when these 3 enterprises, companies with fictitious contact information, no offices in China, headquarters' offices which were non-existent, was apparently established for the sole purpose of facilitating Chinese nationals in obtaining United States NIV for the purpose of evading provisions of the immigration laws, all in violation of Immigration-Related Entrepreneurship Fraud, Title 8 United States Code, Section 1325(d) Improper Entry by Alien.

**PASSPORT AND IDENTIFICATION FRAUD AND MISUSE**

46. On February 18, 2004 Special Agent Jim MOSS and your affiant conducted an interview of former California Department of Motor Vehicles Senior Technician Vincent COWLEY. COWLEY'S position at CADMV gave him the ability to accept driver's

license applications, approve them, and enter them in the master database, as well as make changes to the master database without any supervising authority. COWLEY stated that on November 16, 2002, that KATHLEEN, a personal friend of 5 years, asked him to issue a State of California Driver's license in a name other than her legal name. KATHLEEN told COWLEY about her problems in China and that she needed to change her name to facilitate her travel to China since she was not permitted to travel in her legal name. KATHLEEN stated that she had no documentation for a name change. COWLEY changed the name on KATHLEEN'S DMV record, C5580030, from Kathleen Ting XU to Megan Cathy XU without documentation. COWLEY stamped the Driver's License application "Confidential Information deleted" as if he had been presented legal documentation representing a name change, which, in the State of California constitutes fraud and the DMV considers a violation of policy and cause for termination. COWLEY stated that he was not compensated for this act but that KATHLEEN did take him out for dinner. COWLEY admitted that he knew fraudulently entering the name change in the CADMV database was wrong but he wanted to help her.

47. On December 16, 2002, an individual identifying herself as Megan Cathy XU, born on October 21, 1968 in China, executed passport application (DS-11) No. 057039931 at a U.S. Post Office in Fremont, CA before a Postal Clerk authorized to accept passport application. The person presenting the passport application executed the form under oath before the postal beneath the following jurat: "I solemnly swear that the statements made on this application are true and the photograph attached is a true likeness of me." The application included a certified copy of a Naturalization Certificate, issued on August 20, 1987 in the name of Kathleen Ting Yin WONG. The certificate listed the Date of Birth as October 2, 1968 and the place of birth as China. The passport application reflects that Megan Cathy XU, stated under oath, that her social security number is 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. The passport application also reflects further that Megan Cathy XU, stated under oath, and provided a California State Driver's License, in the name of Megan Cathy XU, number D5580030 issued on November 16, 2002 as proof of identification.

48. On December 24, 2002, the United States Department of State issued United States Passport, #057039931 in the name of Megan Cathy XU based on the information included with the submission of the DS-11.

49. On November 25, 2003, Special Agent Kendrick YEUNG of the Department of Homeland Security and Agent BATALLA of the Transportation Security Administration interviewed KATHLEEN at the San Francisco International Airport after KATHLEEN arriving on a flight from Hong Kong. During the interview the agents confiscated the United States Passport #057039931 in the name of Megan Cathy XU. The passport was subsequently turned over to your affiant. A review of this United States Passport revealed that this passport had been presented as identification on 19 occasions for entry or exit into the United States, Hong Kong and Macau.

50. Kathleen is a previously deported felon in the People's Republic of China. Under her other names, she may not have gained entrance into the country, or she may have been discovered by the Chinese Public officials while inside the country, which would lead to her arrest.

**FALSE STATEMENT IN THE APPLICATION OF A PASSPORT**

Title 18 United States Code 1542

51. Based on the above information, your affiant believes that probable cause exists that KATHLEEN submitted DS-11 No. 057039931 in the name of Megan Cathy XU, knowingly and willfully made false statements in the application for the passport when she used a fraudulently obtained State of California driver's license in the name of Megan Cathy XU when she is in fact Kathleen Ting WONG using her maiden name, or Kathleen Ting XU using her married name, and entered her date of birth as October 21, 1968 when she was in fact born on October 2, 1968, in violation of Title 18 United States Code, Section 1542.

**MISUSE OF PASSPORT**

Title 18 United States Code 1544

52. On the basis of the above information, your affiant believes that probable cause exists that KATHLEEN willfully and knowingly used a passport in violation of the rules prescribed pursuant to the laws regulating the issuance of passports when she presented United States Passport # 057039931, in the name Megan Cathy XU, which was obtained with the use of fraud, as identification, which constitutes misuse of a passport, in violation of Title 18 United States Code 1544.

Corey R Dunphy
Special Agent
U.S. Department of State
Diplomatic Security Service

Sworn and subscribed to before me
This 24 day of September 2004.

EDWARD M. CHEN
United States Magistrate Judge